**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

JENNIFER WAGGETT, on behalf
of herself and all others
similarly situated
          Plaintiff,

   v.

MRS BPO, LLC

         Defendant.

1:22-cv-01151-NLH-EAP

**OPINION**

---

**APPEARANCES:**

JOSEPH K. JONES
JONES, WOLF & KAPASI, LLC
375 PASSAIC AVENUE
SUITE 100
FAIRFIELD, NJ 07004

   *Attorneys for Plaintiff JENNIFER WAGGETT*

MONICA M. LITTMAN
RICHARD J. PERR
KAUFMAN DOLOWICH VOLUCK LLP
FOUR PENN CENTER
1600 JOHN F. KENNEDY BOULEVARD
SUITE 1030
PHILADELPHIA, PA 19103

   *Attorneys for Defendant MRS BPO, LLC*

**HILLMAN**, District Judge

   This matter comes before the Court by way of a motion for judgment on the pleadings filed by Defendant MRS BPO, LLC ("MRS BPO" or "Defendant") pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)").  (ECF No. 15).  Jennifer Waggett ("Plaintiff") opposes the motion.  (See ECF No. 18).  The Court

has considered the parties' written submissions and decides this motion without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons that follow, Defendant's Motion for Judgment on the Pleadings will be denied.

## BACKGROUND

**A. Facts**

The instant matter arises out of Plaintiff's civil action for alleged violations of the Fair Debt Collection Practices Act ("FDCPA").  At a date prior to January 13, 2022,[1] Plaintiff incurred a financial obligation to non-party GM Financial in connection with a sale or lease of a motor vehicle ("the debt"). (ECF No. 1 at 5, ¶ 18).  Additionally, on or before January 13, 2022, GM Financial referred the debt to MRS BPO for collection. (Id. at 6, ¶ 26).  At the time of GM Financial's referral of the debt to MRS BPO, the debt was in default and had been in default since August 2017.  (Id. at ¶ 27-28).  The statute of limitations for legal action to collect the debt expired as of August 2021.[2]  (Id. at ¶ 33).

---

[1] Plaintiff brought to the Court's attention that the original Complaint incorrectly referred to the date of the debt collection letter as "February 4, 2022."  (ECF No. 18 at 1 n.1). The correct date is used in this Opinion.

[2] Under both Pennsylvania and New Jersey law, the statute of limitations for actions sounding in contract for the sale of goods is four years.  See 42 Pa.C.S. § 5525(a); N.J. Stat. § 12A:2-725(1).  Plaintiff's complaint alleges that the debt to GM Financial was in connection with the sale or lease of a motor

On or around January 13, 2022, Defendant sent a letter in connection with collection of the debt to Plaintiff ("the letter").  (<u>Id</u>. at ¶ 30).  Upon receipt of the letter, Plaintiff read it in its entirety.  (<u>Id</u>. at ¶ 34).  The letter provided the following information:

> Dear JENNIFER WAGGETT,
>
> We recognize that a possible hardship or pitfall may have prevented you from satisfying your obligation.  We are presenting three options to resolve your balance. We are not obligated to renew this offer.
>
> <u>Option 1</u>: A monthly payment plan on the full balance of the account.
>
> <u>Option 2</u>: You pay $1,897.20 in ONE PAYMENT to be received in this office on or before 01/29/2022.
>
> <u>Option 3</u>: You make TWO PAYMENTS of $1,198.23 each.  The first payment to be received in this office on or before 01/29/2022 and the second payment on or before 02/24/2022.
>
> Payment may be made by calling 800-949-3249, mailing to the above address or by using our online payment website at ....   When you call please let our representative

---

vehicle.  (ECF No. 1 at 6, ¶ 23).  The precise nature of the source of the debt is not clear to the Court from the pleadings, but Plaintiff's Brief in Opposition to the instant motion alleges that the debt involved a GM Financial credit card, which could only be used in connection with the lease or sale of a GM motor vehicle.  (ECF No. 18 at 7, Note 3).  Under the applicable state law of New Jersey, single-store credit cards are subject to a four-year statute of limitations for debt collection. <u>Santiago v. Cavalry Portfolio Servs., LLC</u>, No. 15-8332, 2018 U.S. Dist. LEXIS 94773 (D.N.J. June 5, 2018) (citing <u>Midland Funding LLC v. Thiel</u>, 446 N.J. Super. 537 (Super. Ct. App. Div. 2016)).  The parties do not appear to dispute that any lawsuit to collect the debt incurred by Plaintiff would have been time-barred by the time Defendant sent the collection letter at issue in this case.

know that you have received the GM FINANCIAL Option
Letter.

Sincerely,
MRS BPO, LLC

(ECF No. 1 at 13 of 14, Ex. A) (website address omitted).

The letter also states "GM FINANCIAL" as the "CREDITOR" and
states an "ACCOUNT BALANCE" in the amount of $4,992.61 and that
"[t]ax time is a great time to put issues like this behind you.
Consider using any possible tax refund you may receive to
satisfy your outstanding obligation." (Id.). At the bottom of
the page, the letter states: "This is an attempt to collect a
debt and any information obtained will be used for that purpose.
This communication is from a debt collector." (Id.).

**B. Procedural History**

On March 2, 2022, Plaintiff filed the instant Complaint
against Defendant with this Court, alleging violations of the
FDCPA. 15 U.S.C. § 1692 *et seq.* (ECF No. 1). Plaintiff
alleges that Defendant engaged in false, deceptive, or
misleading representations in violation of 15 U.S.C. § 1692(e),
namely § 1692(e)(2)(A), § 1692(e)(5), and § 1692(e)(10) when
Defendant sent Plaintiff the letter that offered payment options
for a time-barred debt. (Id. at 9, ¶¶ 54-56). On April 11,
2022, Defendant filed an Answer to Plaintiff's Complaint. (ECF
No. 6).

This matter comes before the Court by way of Defendant's Motion for Judgment on the Pleadings, filed on June 3, 2022. (ECF No. 15).  On June 19, 2022, Plaintiff filed a Memorandum in Opposition to Defendant's Motion for Judgment on the Pleadings. (ECF No. 18).  On July 11, 2022, Defendant filed a reply brief in support of its motion.  (ECF No. 22).  Thus, the matter is now ripe for adjudication.

## DISCUSSION

Plaintiff alleges that Defendant violated Sections 1692e(2)(A), 1692e(5), and 1692e(10) of the FDCPA.  15 U.S.C. § 1692e.  Defendant moves for judgment on the pleadings pursuant to Rule 12(c), asserting that Plaintiff's claims fail as a matter of law because the letter did not use language that could lead Plaintiff into thinking that the debt could be legally enforced, when in fact it was time-barred.

**A. Subject Matter Jurisdiction**

This Court exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C § 1331 and 15 U.S.C. § 1692k(d).

**B. Legal Standard of a Motion for Judgment on the Pleadings and a Motion to Dismiss for Failure to State a Claim**

Under Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial.  F. R. Civ. P. 12(c); Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991).  Under Rule 12(c), the movant

5

must clearly establish that "no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (citation and internal quotation marks omitted).

In analyzing a Rule 12(c) motion, a court applies the same legal standards as applicable to a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") because Federal Rule of Civil Procedure 12(h)(2) provides that a defense of failure to state a claim upon which relief can be granted may also be made by a motion for judgment on the pleadings.  Turbe, 938 F.2d at 428.  Consequently, the Court must accept all well-pleaded allegations in the Complaint as true and view them in the light most favorable to the plaintiff. Jones v. Davidson, 666 Fed. App'x 143, 146 (3d Cir. 2016) (citing Warren Gen Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Pursuant to a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ...."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in

original) (citations omitted) (first citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957); <u>Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.</u>, 40 F.3d 247, 251 (7th Cir. 1994); and then citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. <u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 563 n.8 (2007) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)); <u>see also Ashcroft v. Iqbal</u>, 556 U.S. 662, 684 (2009) ("Our decision in <u>Twombly</u> expounded the pleading standard for 'all civil actions' . . . ."); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) ("<u>Iqbal</u> . . . provides the final nail-

in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Federal Rule of Civil Procedure 56. See Fed. R. Civ. P. 12(b).

## C. Analysis

### a. FDCPA Standards

The FDCPA provides a remedy for consumers who have been subjected to abusive, deceptive, or unfair debt collection

practices by debt collectors.  Piper v. Portnoff Law Assocs.,
396 F.3d 227, 232 (3d Cir. 2005) (citing Pollice v. Nat'l Tax
Funding, L.P., 225 F.3d 379, 400 (3d Cir. 2000)).  To prevail on
an FDCPA claim, a plaintiff must demonstrate that (1) she is a
consumer, (2) the defendant is a debt collector, (3) the
defendant's challenged practice involves an attempt to collect a
"debt" as the Act defines it, and (4) the defendant has violated
a provision of the FDCPA in attempting to collect the debt.
Tatis v. Allied Interstate, LLC, 882 F.3d 422, 427 (3d Cir.
2018).

Under the FDCPA, the term "consumer" means any natural
person obligated or allegedly obligated to pay any debt.  Piper,
396 F.3d at 232 (citing 15 U.S.C. § 1692a(3)).  The FDCPA
defines "debt" as "any obligation of a consumer to pay money
arising out of a transaction in which the money, property,
insurance, or services which are the subject of the transaction
are primarily for personal, family, or household purposes,
whether or not such obligation has been reduced to judgment."
Id. (citing 15 U.S.C. § 1692a(5)).  A "debt collector" is
defined as "any person who uses any instrumentality of
interstate commerce or the mails in any business[,] the
principal purpose of which is the collection of any debts, or
who regularly collects or attempts to collect, directly or

indirectly, debts owed or due or asserted to be owed or due another." Id. (citing 15 U.S.C. § 1692a(6)).

Here, Plaintiff alleges that she incurred a debt to GM Financial, thus qualifying her as a consumer under the FDCPA definition. (ECF No. 1 at 5, ¶ 18). Plaintiff also alleges that the debt to GM Financial arose out of a transaction in connection with the sale or lease of a motor vehicle, primarily for personal, family, or household purposes, thus qualifying her financial obligation to GM Financial as a debt under the FDCPA definition. (ECF No. 1 at 5-6, ¶¶ 18-23). Furthermore, Plaintiff alleges that Defendant uses the instrumentalities of interstate commerce or the mails to engage in the principal business of collecting debt and/or to regularly engage in the collection or attempt to collect debt asserted to be due or owed to another, and thus the Court concludes that Defendant is a debt collector satisfying the FDCPA definition.[3] (ECF No. 1 at 2, ¶ 9). Finally, Plaintiff alleges that Defendant sent the January 13, 2022, letter in an attempt to collect on her debt to

---

[3] The Court notes that in its answer, Defendant states that while at times it may be deemed a debt collector as that term is defined by the FDCPA, it has insufficient information and knowledge to either admit or deny that it was a debt collector in regard to Plaintiff and this matter. (ECF No. 6 at 2, ¶ 8-9). This is despite the clear language in the letter identifying Defendant as just that.

GM Financial, which satisfies the third prong of her FDCPA claim.  (ECF No. 1 at 6, ¶ 31).

Therefore, only the fourth prong of Plaintiff's FDCPA claim is in dispute: whether Defendant's letter violated a provision of the FDCPA.

### b. § 1692e Claims

Plaintiff alleges that Defendant's letter violated several provisions of the FDCPA, in pertinent part:

1. § 1692e(2)(A), which prohibits the false representation of the character, amount, or legal status of any debt;

2. § 1692e(5), which prohibits a debt collector from making threats to take any action that cannot legally be taken or that is not intended to be taken; and

3. § 1692e(10), which prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

To determine whether a particular practice or action violates the FDCPA, a court must analyze the debt collector's communication from the perspective of the "least sophisticated debtor."  Knight v. Midland Credit Mgmt., 755 Fed. App'x 170, 173 (3d Cir. 2018).  "Although the least sophisticated debtor standard is lower than the standard of a reasonable debtor, it preserves a quotient of reasonableness and presumes a basic level of understanding and willingness to read with care."  Jensen v. Pressler & Pressler, 791 F.3d 413, 418-19 (3d Cir. 2015) (internal citations and quotations omitted).  In doing so,

the standard "gives effect to the Act's intent to protect the gullible as well as the shrewd." Blair v. Fed. Pac. Credit Co., 563 F. Supp. 3d 347, 354 (D.N.J. 2021) (quoting Jensen, 791 F.3d at 418).

Although debt collectors cannot take legal action to enforce time-barred debts, they are allowed to request voluntary repayment of the same debt under the FDCPA.  See Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 32-33 (3d Cir. 2011); Campuzano-Burgos v. Midland Credit Mgmt., 550 F.3d 294, 299 (3d Cir. 2008); Sullivan v. Allied Interstate, LLC, No. 16-203, 2016 U.S. Dist. LEXIS 145451, *17 (W.D. Pa. Oct. 18, 2016).  In their efforts to collect time-barred debts, however, debt collectors cannot send communications "when read in their entirety, . . . deceive or mislead the least-sophisticated debtor into believing that she has a legal obligation to pay the time-barred debt." Tatis v. Allied Interstate, LLC, 882 F.3d 422, 430 (3d Cir. 2018).

However, the Third Circuit in Tatis declined to impose any affirmative requirements on debt collectors regarding language they must use, leaving courts to analyze such letters holistically from the perspective of the least sophisticated debtor.  Id.  Therefore, the Court will analyze whether the language of the letter sent by Defendant to Plaintiff, in this

case, could lead the least sophisticated debtor to believe that she had a legal obligation to pay the debt.

### i. **Status of the Debt**

The Court's analysis of Defendant's argument that Plaintiff's claims fail as a matter of law hinges on whether the precise language used in the letter misleads or deceives debtors into believing they have a legal obligation to repay time-barred debts, even when the letters do not threaten legal action. Here, the question is whether the phrases "your obligation" and "your outstanding obligation," when viewed in the context of the letter as a whole, connote Defendant's ability or intention to enforce the debt in court to the least sophisticated debtor. The Third Circuit has provided some insight into the analysis a court should use to determine whether certain phrases can be considered implicitly litigious or sufficiently misleading and therefore violate the relevant parts of the FDCPA.

In Tatis, the Third Circuit held that a debt collector's use of the word "settlement offer" in a letter sent to a consumer could serve as the basis for an FDCPA claim, even where said letter did not explicitly threaten litigation to collect on a time-barred debt. Tatis, 882 F.3d at 425. However, "standing alone, settlement offers and attempts to obtain voluntary repayments of stale debts do not necessarily constitute deceptive or misleading practices." Id. at 430. Tatis further

declined to "impose any specific mandates on the language debt collectors must use, such as requiring them to explicitly disclose that the statute of limitations has run."  Id.

Tatis instructs the Court to closely scrutinize the language used in a collection letter and determine whether it uses words with litigious connotations, or whether such words are sufficiently misleading or deceptive to a debtor, inducing a belief that they have a legal obligation to repay time-barred debts.  See id. at 428-29.  Following Tatis, this approach has been employed in other decisions within the District Courts of the Third Circuit.  See generally Blair v. Fed. Pac. Credit Co., LLC, 563 F. Supp. 3d 347 (D.N.J. 2021); Norman v. Allied Interstate, LLC, 310 F. Supp. 3d 509 (E.D. Pa. 2018); Rozario v. Admin Recovery, LLC, No. 20-801, 2020 U.S. Dist. LEXIS 128112 (D.N.J. July 21, 2020).

In this District, Chief Judge Wolfson applied Tatis when she dismissed an FDCPA claim on the grounds, in part, that the words "close this account" could not lead the least sophisticated debtor to believe that a letter implicitly threatened litigation or enforcement of a time-barred debt. Rozario, 2020 U.S. Dist. LEXIS 128112, at *6.  Chief Judge Wolfson explicitly noted that, unlike the word "settlement," "'close this account' does not, in any other context, relate to litigation."  Id. at *7.

Similarly, in Blair, another judge in this District dismissed an FDCPA claim, holding that a collection letter's use of the phrases "satisfy" and "satisfy your account" was insufficient to establish a plausible § 1692e violation.  Blair, 563 F. Supp. 3d at 358.  Judge McNulty examined the definition of "satisfy" and "satisfaction" in the Oxford English Dictionary and Black's Law Dictionary, finding that neither source contained a definition that mentioned litigation.  Id.  Judge McNulty noted that "'satisfy' seem[ed] a fair word to use where a debt continues to exist despite the inability to legally enforce it, and the message is that it can be discharged for some amount."  Id.

In the instant matter, in Defendant's letter to Plaintiff, the phrase "satisfy your obligation", falls in between the poles of clearly permissible and clearly impermissible language in this District's and Circuit's case law.  The word "obligation" has appeared in letters that have been found to violate the FDCPA, but no court within this Circuit has analyzed a letter that uses the word "obligation" without the word "settlement," (a word deemed clearly misleading as to the legal status of the debt), also present.  See e.g., Norman v. Allied Interstate, LLC, 310 F. Supp. 3d 509, 512 (E.D. Pa. 2018) (reciting that the letter at issue used the terms "satisfy your obligation" and "discuss potential settlement options").  "Obligation" on its

face does not connote the same overt implication of litigation as "settlement," "settlement offer," or "settlement options," nor does it fall within the genus of administrative or banking terms such as "close" or "satisfy" an account, which case law holds is within the boundaries of permissible language under the FDCPA.

Because no Third Circuit case directly addresses the permissibility of the word "obligation," in accordance with the analytical approach used in Tatis, Rozario, and Blair, this Court will examine the word "obligation" as it is defined in six separate dictionaries, as used in Tatis, to discern its connotations.[4]  In the view of this Court, contrary to Defendant's assertions, the word "obligation" does carry a legal connotation that could mislead the least sophisticated debtor when viewed, as set forth below, in the overall context of Defendant's letter.

Each of the six dictionary sources examined by the Court defines the word "obligation," at least in part, as a binding

---

[4] See Tatis, 882 F.3d at 428 (citing Buchanan v. Northland Group, Inc., 776 F.3d 393, 399 (6th Cir. 2015)) (listing the six dictionaries used to examine the word "settlement": *Webster's Third New International Dictionary*, *The Oxford English Dictionary Online*, *The American Heritage Dictionary of the English Language*, *Wiktionary*, *Dictionary.com*, and *Black's Law Dictionary*).  The Court has gathered the definition for "obligation" in each of these six dictionaries and included the relevant definitions for the instant analysis.

duty to perform or forbear, and each source explicitly ties this duty to a form of enforcement.[5]  Black's Law Dictionary defines "obligation" as "a legal or moral duty to do or not do something... whether the duty is imposed by law, contract, promise, social relations, courtesy, kindness, or morality." *Obligation*, Black's Law Dictionary (11th ed. 2019).[6]  Webster's definition is even more explicit in establishing the connection between the word "obligation" to principles of legal enforcement: "a bond with a condition annexed and a penalty for nonfulfillment; ... a duty arising by contract: a legal liability, 4a: a condition or feeling of being bound legally or ethically."  *Obligation*, Webster's Third New Int'l Dictionary (1993).[7]

---

[5] See Jeffrey L. Kirschmeier and Samuel A. Thumma, Scaling the Lexicon Fortress: The United States Supreme Court's Use of Dictionaries in the Twenty-First Century, 94 Marq. L. Rev. 77, 88 (2010) (explaining that use of dictionaries by Supreme Court and other courts is more common in types of cases that happen to be conducive to dictionary use, such as statutory interpretation cases).

[6] Id., note 4 at 108 (noting that the most frequently cited law dictionary is Black's Law Dictionary).

[7] Id., note 4 at 108-9 (explaining that Webster's Third New International Dictionary is the most frequently cited general use dictionary by the Supreme Court).  Kirschmeier and Thumma further state that the frequency of the Supreme Court's use of these dictionaries impacts not only the Supreme Court's decisions, but also decisions by other courts, noting that "for example, one recent United States District Court decision relied upon Webster's Third New International Dictionary 'because it is the source most often relied upon by the Supreme Court for federal statutory interpretation.'"  Id. at 109.

The idea that an obligation is, in at least one commonly understood way, a legal duty accompanied by a threat of enforcement for nonfulfillment is repeated in other printed dictionary sources: "a social, legal, or moral requirement, such as a duty, contract, or promise, that compels one to follow or avoid a particular course of action," *Obligation*, American Heritage Dictionary of the English Language (5th ed. 2016); "an enforced or burdensome task or charge." *Obligation*, Oxford English Dictionary (3d ed. 2004).

Continuing the <u>Tatis</u> approach, the Court has examined definitions from more common sources that the least sophisticated debtor could access or would consider authoritative.  Free online dictionaries such as Wiktionary.com and Dictionary.com provide definitions of "obligation" that connote nearly identical meanings to those above: a duty to perform, and a possibility of enforcement or penalty for failure to comply.  These sources define "obligation" as "a social, legal, or moral requirement, duty, contract, or promise that compels someone to follow or avoid a particular course of action." *Obligation*, Wiktionary, (Jun. 17, 2022, 8:48 PM), https://en.wiktionary.org/wiki/obligation.  Even more explicitly, on Dictonary.com, an obligation is defined as "an agreement enforceable by law." *Obligation*, Dictionary.com, https://www.dictionary.com/browse/obligation (last visited Jul.

18

14, 2022).  Each of the definitions found in these formal and
informal dictionary sources demonstrates that an "obligation" is
commonly defined as a duty with a condition of enforcement that
may be compelled by the law, some even stating that those that
fail to meet such obligation can be penalized.

Defendants contend that the word "obligation" carries no
explicit or implicit threat of litigation.  (ECF No. 22 at 3).
Contrary to Defendant's conclusions, the Court considers the
word "obligation" to have more litigious connotations embedded
in at least one of its commonly understood definitions, and
therefore is closer to "settlement" and other impermissible
language than it is to permissible language such as "satisfy."
The legal connotations in the definitions of "obligation" are
more than simply references to "legal requirements" and "law" —
these references are specific to enforcement.  Analysis of each
dictionary source indicates that "obligation" implies a debt,
which an ordinary person would assume could be collected and
enforced absent an agreement between the creditor and debtor to
the contrary.  It is more than plausible, and even likely, that
the least sophisticated debtor would understand that their
"obligation" is a duty to pay that a creditor could enforce in
court through the commencement of litigation.

The Court recognizes that the definitions cited above
encompass a legal duty "or" a moral one and that the former

19

connotes enforcement in a court of law and the latter does not. But under the FDCPA the words chosen by the debt collector are viewed through the eyes of the least sophisticated debtor who should not have to parse out which of the two definitions the debt collector intended.  So long as one definition, as it does here, falls squarely within the concept of an enforceable promise the least sophisticated debtor test is satisfied.

Defendant heavily relies upon Blair's holding to justify its disavowal of the litigious connotations of "obligation," arguing that the term "satisfy" had more legal focused definitions and yet was considered a "fair word to use where a debt continues to exist despite the inability to legally enforce it[.]"  (Id.) (citing Blair 563 F. Supp. 3d at 358).  However, the debt collection letter in Blair explicitly stated that because of the age of the debt, the debtor could not be sued for it.  Id. at 352.  The court in Blair stated that this was the "key difference" between its case and Tatis.  Id. at 359.  Given that the letter at issue in this case did not acknowledge the debt as time-barred whatsoever, the legal connotations of the term "obligation" is not ameliorated by such a disclaimer.

Defendant also omits Judge McNulty's comments regarding the precarious nature of the decision: "I cannot close without observing that this Letter comes close to the line.  It seems designed to be exactly as unclear as is legally permissible ...

be that as it may, the FDCPA does not require creditors to act as guardians or give debtors good advice; it is primarily a prohibition aimed at statements that would *mislead* debtors." Id. at 360 (emphasis in original).

This view that a fair interpretation of the word "obligation" connotes a legally enforceable promise is bolstered by Congress' choice of the same word in defining the type of legal relationship the FDCPA was intended to regulate.  Although this Court is interpreting the Defendant's letter and not the statute itself, Congress' use of the same word in the statutory text is telling.  As set forth above, the FDCPA requires an attempt to collect a "debt" which it defines as "any obligation of a consumer to pay money arising out of a transaction [involving a] . . . . transaction . . . . primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5)).  Clearly, Congress employed the plain and ordinary meaning of the word "obligation" – a legal duty arising from mutual promises to pay on the one hand and to perform services or provide goods on the other.  And moreover, one susceptible to being "reduced to judgement."  Id.  It would truly be ironic that Congress would use that word to define the reach of the statute only for a court to interpret a regulated person's use

of the same word in such a narrow or more nuanced way as to
cabin the same remedial statute.

The notion that "obligation" conveys a contract, or a
mutually enforceable promise, is also reinforced by the
Defendant's use of the sentence "We are not obligated to renew
this offer[]" immediately following the use of the word
"obligation" to describe the Plaintiff's duty.  By excluding one
obligation – a duty to offer additional offers of compromise -
the phrase suggests the existence of others and therefore a
contractual relationship with a concomitant right of action for
breach.  Moreover, the phrase telegraphs a not so veiled threat
consistent with a right of enforcement.  A least sophisticated
debtor would reasonably construe the phrase "We are not
obligated to renew this offer[]" within the context of the
letter as a whole as "Act now to take our offers of compromise
before we make our next move."  This inherent threat of further
action in the face of failing to select one of the three payment
options is inconsistent with a moral obligation or voluntary
decision to pay a time-barred debt and wholly consistent with
the debt collector retaining a right of action to compel
payment.  Unlike Blair, nowhere is this fourth option not to pay
the debt at all without legal consequence made clear despite the
Defendant's foreknowledge that it can take no action if that
course of action was chosen by the debtor.  Instead, the not so

subtle message "this is your last chance" would plainly mislead the least sophisticated debtor.

In sum, on its face and without the benefit of discovery, the letter when viewed in its entirety appears to be a document carefully crafted to push the envelope of acceptable language under the FDCPA while maximizing the chance of collecting from debtors.  The FDCPA was enacted to prevent such misleading tactics.  Therefore, Plaintiff has alleged sufficient facts that state a claim for relief which is plausible on its face; that is, that the use of the word "obligation" in the context of the letter as a whole could mislead the least sophisticated debtor to believe that Defendant would seek to judicially enforce collection on her time-barred debt if the three proffered payment options were rejected.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant's Rule 12(c) Motion for Judgment on the Pleadings will be denied.  An appropriate order will be entered.

Date: <u>August 11, 2022 </u>          <u> s/ Noel L. Hillman </u>
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.